JOHN J. HALLORAN, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 28, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Evidence,* Opinion: experts, Remoteness, Competency.  *Negligence,* Street railway.
*Practice, Civil,* Conduct of trial: curing error in admission of evidence.  *Words,*
"Sharp curve."

In an action by an administrator against a corporation operating a street railway
for causing the death of the plaintiff's intestate when he was a passenger on a
car of the defendant and the car was entering upon a curve, where the plaintiff
had introduced evidence of a rule of the defendant requiring motormen in going
round "sharp curves" not to run over four miles an hour, the plaintiff was
permitted, against the defendant's objection, to ask an expert the question,
"Assuming that the radius of this curve is one hundred and fifty feet to one
hundred and sixty, as you have stated, whether or not this is a sharp curve?"
and the witness answered, "Yes."  *Held,* that it was error to allow the question
to be put to the expert, as the words "sharp curve" were to be understood by the
jury according to their common and accepted usage and not in a mathemati-
cal or scientific sense.

In the same case the presiding judge of his own motion called the attention of the
jury to the fact that the opinion of the expert witness above mentioned was
immaterial and ordered that the question and answer should be stricken out
and instructed the jury not to consider it, saying to them, "It is a practical
question, both in its aspect as regards the conduct of the motorman and as re-
gards what you say about that curve.  You have seen the curve.  It is for you
to say whether it comes under the definition of a sharp curve or not."  *Held,*
that the error in the admission of the evidence was cured fully by the explana-
tion and instruction of the judge.

In the same case the defendant offered evidence to show the nature of the curve
with reference to the ease with which cars could go round it without jerks and
in this connection offered to show that the curve was constructed according to
the recommendations contained in a certain handbook so that there would be
a minimum of jerk and jolt.  The presiding judge excluded the evidence.  *Held,*
that its exclusion was proper, as the judge rightly might have considered it
too remote.

In the same case it was admitted that the plaintiff's intestate five years before the
accident had met with an injury by which his skull was fractured, and the de-
fendant then offered to show by expert testimony that a fractured skull impairs
equilibrium, that habits of alcoholic drinking, whether constant or intermit-
tent, still further impair equilibrium and that the intestate since the fracture
of his skull had drunk intoxicating liquors and had been drunk from time to time.
The judge excluded the evidence.  No evidence was offered to show that the
balance of mind or body of the intestate was less than normal at the time of the

accident or that he was under the influence of liquor at that time. *Held,* that the evidence was excluded properly.

In the same case the defendant offered to show "the number of cars that would be passing by at this time and the time between the cars." No offer was made to show the number of cars that in fact passed over that street on that day at that time. The judge excluded the evidence. *Held,* that the exclusion was proper.

PIERCE, J.  This is an action of tort, brought by the administrator of Daniel M. Halloran to recover damages under the St. 1907, c. 392, for the death of the intestate, alleged to have been caused through the negligence of the defendant while the intestate was a passenger on one of the defendant's cars on September 17, 1913, about 7:10 A. M. on Pleasant Street, Dorchester, and when the car was entering upon a curve.

During the trial, subject to the defendant's exception, the plaintiff was permitted to ask an expert witness the following question: "Assuming that the radius of this curve is one hundred and fifty feet to one hundred and sixty, as you have stated, whether or not this is a sharp curve?" The witness answered, "Yes." The question had reference undoubtedly to evidence previously introduced by the plaintiff, to the effect that a rule of the defendant required motormen in going round sharp curves not to run over four miles an hour. The words "sharp curve" in the rule in their signification are not referable to a definition of them in a mathematical or scientific sense, but are to be understood in their common and accepted usage.

After the evidence was received, the presiding judge* of his own motion called the attention of the jury to the fact that the opinion of the engineer was immaterial, directed that the evidence should be stricken out and that it should not be considered by the jury, and said, speaking to the jury, "It is a practical question, both in its aspect as regards the conduct of the motorman and as regards what you say about that curve. You have seen the curve. It is for you to say whether it comes under the definition of a sharp curve or not." By this explicit and unmistakable explanation and instruction, the error in the reception of the testimony was fully cured.

The defendant offered testimony to show the nature of the curve with reference to the ease with which cars could go round it with-

* *Lawton,* J.  The jury returned a verdict for the plaintiff in the sum of $5,000; and the defendant alleged exceptions.

out jerks; that it was constructed in accordance with certain recommendations contained in a Hand Book for Street Railway Engineers, Chapter III, Transition Curves, and that as so constructed there would be a minimum of jerk and jolt. The evidence was properly excluded; its force was theoretical and of little practical value in assisting the jury to weigh and to determine the truthfulness of the testimony of witnesses or to discredit what the jury had seen and had learned through their own eyes. The presiding judge rightly may have considered it as too remote.

It was admitted that in 1908 the intestate met with an injury in which his skull was fractured. The defendant then offered to show by expert testimony that a fractured skull impairs equilibrium; that alcoholic habits or habits of drinking, whether constant or intermittent, still further impair equilibrium, and that the intestate since the fracture of 1908 had drunk intoxicating liquors and had been drunk from time to time.

No evidence was offered of a universal and unvarying rule that loss of equilibrium follows, without exception, every fracture of the human skull regardless of its nature and degree; nor was there evidence to show the nature and the degree of the fracture of the skull of the intestate, or to prove that he had in fact a balance of mind and body less than normal; or that at the time of the accident he was intoxicated or under the influence of liquor. There is no evidence that the motorman knew of the presence upon the car of the intestate, or that his conduct in the driving of the car was influenced in the slightest degree by a consideration of the presence thereon or absence therefrom of a person or persons of like characteristics. The evidence was properly excluded.

The defendant offered to show "the number of cars that would be passing by at this time, and the time between the cars." No offer was made to show the number of cars that in fact passed over that street on that day at that time. In other words, the offer was to show the number of cars scheduled to run on that day and the time allotted to the running. The evidence was properly excluded.

The exceptions have been considered in the order of their discussion by the defendant, and must all be overruled.

*So ordered.*

*J. E. Hannigan,* for the defendant.
*J. F. O'Connell,* for the plaintiff.